IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | |
|---|---|
| BRETT C. BARTON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:19-CV-181-Z |
| § | |
| C. R. BARD, INC., and BARD § | |
| PERIPHERAL VASCULAR, INC., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

This is a products liability case that, along with many others, spent years in a Multi-District Litigation ("MDL") court in Arizona. This case was transferred to this district and division in September 2019, and Plaintiff Brett C. Barton now seeks "intra-district" transfer of this case to Judge Karen Scholer in the Dallas Division. ECF No. 36. Defendants C.R. Bard, Inc., and Bard Peripheral Vascular, Inc., (hereinafter "Defendants") oppose the transfer. ECF No. 35. For the reasons discussed below, Plaintiff's Amended Motion to Transfer (ECF No. 36) is DENIED.

I. BACKGROUND

On January 3, 2014, physicians in Amarillo, Texas implanted a Meridian® Vena Cava Filter that was manufactured and marketed by Defendants into Plaintiff's inferior vena cava ("IVC"). ECF No. 1 at 2–3. In August 2015, the Judicial Panel for Multidistrict Litigation ("JPML") consolidated twenty-two cases against Defendants that alleged various IVC filters were defective into one MDL court in Arizona. ECF No. 3 at 1. The JPML selected the MDL court to preside over common discovery, pretrial matters, and bellwether trials. *Id.* Since then, over 8,000 individual plaintiffs have filed civil actions against Defendants—many of which were filed directly in the MDL court. *Id.* Based on the recommendation of the MDL court, the JPML remanded or

transferred the remaining cases to their appropriate districts and divisions across the country. *Id.* at 1–2. In many cases, the parties agreed to the venue as (1) identified by the plaintiff in the short form complaint, or (2) where the plaintiff was implanted with the filter. *Id.* at 4.

Plaintiff's short form complaint states that (1) venue would be proper in the Eastern District of California, and (2) the IVC filter was implanted while Plaintiff resided in Texas. ECF No. 1 at 1, 2. Rather than selecting the Eastern District of California, the JPML transferred the case to this Court in Amarillo, Texas—a far cry from Plaintiff's requested home venue—as it is the district and division where Plaintiff was implanted with the IVC filter. *See* ECF Nos. 3, 4. Plaintiff does not seek transfer of venue to California but seeks "intra-district" transfer from the Amarillo Division to the Dallas Division. ECF No. 36.

At the time Plaintiff filed his motion, the MDL had transferred thirty-three cases to the Northern District of Texas. ECF No. 35 at 5. Today, there are approximately fifty cases pending in this district: seventeen in the Dallas Division, six in the Amarillo Division, with the remaining cases dispersed across the other five divisions. As is common in mass tort litigation, the Dallas Division reassigned its MDL cases to one United States District Court Judge—the Honorable Karen Scholer. *Id.* Plaintiff now seeks to transfer this action to the Dallas Division which, after reassignment, would be presumably presided over by Judge Scholer.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), courts have broad discretion to transfer "any civil action to any other district or division where it might have been brought" initially when it is "[f]or the convenience of parties and witnesses, in the interest of justice." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter, "*Volkswagen II*") (citing *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254

(1981) (noting the "relaxed standards for transfer")). A plaintiff might have brought an action in a district or division if, at the time he filed the action: (1) any defendant resided in that district or division, and (2) all defendants resided within the state. 28 U.S.C. § 1391(b)(1). Venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

The moving party bears the burden to show that there is "good cause" for transfer and must demonstrate "that the transferee venue is clearly more convenient," and "in the interest of justice." *Volkswagen II*, 545 F.3d at 315. In most transfer cases, courts examine eight private and public interest factors. *Id.* The four private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter, "*Volkswagen I*") (citing *Piper Aircraft*, 454 U.S. at n.6). The four public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

While these factors "are not necessarily exhaustive or exclusive," the Fifth Circuit notes that "none . . . can be said to be of dispositive weight." *Volkswagen II*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947); *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)). "Public and private factors aside, a court must also independently consider how much weight to assign a plaintiff's choice of forum." *Seramur v. Fed. Ins. Co.*, Civ. A. No. 3:19-CV-1678-B2019, WL 3253369, at *2 (N.D. Tex. June 19, 2019) (Boyle, J.) (citing

3

*Davis v. City of Fort Worth*, Civ. A. No. 3:14–CV–1698–D, 2014 WL 2915881, at *2 (N.D. Tex. June 25, 2014) (Fitzwater, J.). "A plaintiff's choice is normally entitled to deference, but when she files suit outside her home forum, the weight accorded to the choice is diminished." *Id.* (internal marks omitted) (quoting *Sivertson v. Clinton*, Civ. A. No. 3:11–CV–0836–D, 2011 WL 4100958, at *4 (N.D. Tex. Sept. 14, 2011) (Fitzwater, J.). Furthermore, courts shall not consider the convenience of counsel because it is irrelevant to the analysis. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003); *see also Volkswagen I*, 371 F.3d at 206 (holding that it is reversible error for the district court to consider the convenience of counsel). Therefore, "within the district court's sound discretion, exercised in light of the particular circumstances of the case . . . the court must balance the two categories of interest—private and public—to resolve whether the movant has carried his burden." *Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Lauren Engineers & Constructors, Inc.*, Civ. A. No. 3:19-CV-1742-S, 2019 WL 6071073, at *1 (N.D. Tex. Nov. 14, 2019) (Scholer, J.) (citations and internal marks omitted).

### III. ANALYSIS

This case is different than "most cases" seeking transfer under 28 U.S.C. § 1441. *See Volkswagen II*, 545 F.3d at 315. Under authority granted by the JPML, the Plaintiff filed directly into the MDL court and did not choose his home forum *per se*. ECF No. 1. Based the MDL court's recommendation, the JPML ultimately ordered the transfer to the Amarillo Division. ECF No. 3. Plaintiff now seeks transfer to the Dallas Division—a venue that is neither Plaintiff's initially selected forum nor the home forum of Plaintiff or Defendants. *See* ECF Nos. 1, 36. Rather, this is the location where "a substantial part of the events or omissions giving rise to the claim occurred" because it is where the physicians implanted the allegedly defective IVC filter into Plaintiff. 28 U.S.C. § 1391(b)(2); *see also* ECF No. 2. The parties do not dispute, and the Court concludes, that

4

Plaintiff could have originally brought this action in either the Amarillo Division or Dallas Division. Thus, the Court finds that venue is proper in the district and division. Accordingly, since venue is proper in either division, the Court now turns its attention to the balance of the private and public factors.[1]

## A. Private Factors for the Convenience of the Parties

Plaintiff asserts that transfer to the Dallas Division is appropriate because it is (1) more convenient, and (2) would be more practical. ECF Nos. 37 at 4; 39 at 2–3. In summary, Plaintiff argues that the first three factors are neutral and only the fourth private factor weighs in his favor.

### 1. *Relative Ease of Access to Sources of Proof*

Plaintiff argues that the access to sources of proof factor "is neutral at worst because the same discovery will occur in this case regardless of venue." ECF No. 39 at 2. However, as Plaintiff acknowledges, of the case-specific discovery that remains to be completed, the treating physicians who implanted and retrieved the IVC filter *all* are located in Amarillo. *Id.* Further, Plaintiff claims that depositions of non-party witnesses[2] "will occur where those parties and witnesses are found regardless of which venue this case is transferred to." ECF No. 36 at 6. However, Plaintiff offers no evidence to show that venue in Amarillo mires the ease of access to sources of proof. At the same time, Plaintiff acknowledges that sources of proof exist right here in Amarillo, and that depositions of the treating physicians will occur here—not in Dallas. *Id.*

Although some relevant sources of proof are *allegedly* located in Dallas, the Court finds that Plaintiff's argument under this factor, when afforded its due weight, fails to demonstrate that the Dallas Division is a "clearly more convenient" venue that "in the interest of justice" requires

---

[1] Plaintiff's motion to transfer addresses the legal standard for consolidation under Rule 42, and thus fails to address the proper legal standard and all the factors under 28 U.S.C. § 1441. However, both in Defendants' response (ECF No. 35) and in Plaintiff's reply brief (ECF No. 39), all the appropriate factors are addressed.
[2] *i.e.*, Plaintiff's treating physicians.

5

transfer. *See Volkswagen II*, 545 F.3d at 315–16; *see also Cortis, Inc., v. Cortislim Int'l Inc.*, 3:12-cv-00562-P, 2012 WL 12885719, at *8 (N.D. Tex. Oct. 16, 2012) (Solis, J.) (noting that movants need to allege more than broad allegations of convenience and should instead specifically identify each witness or source of proof that will be inconvenienced or unavailable). Thus, while this factor might be neutral *at best* for Plaintiff, the Court concludes the relative ease of access to sources of proof weighs *against* transfer.

### 2. *Availability of Compulsory Process to Secure the Attendance of Witnesses*

Plaintiff asserts that the availability of the compulsory process is neutral because, as long as they would not incur a substantial expense, any non-party witnesses can be subpoenaed to attend a trial, hearing, or deposition anywhere in Texas. ECF No. 39 at 2. Plaintiff speculates that his "treating physicians will likely be called at trial by video deposition"—because that is how counsel has conducted trials in other similar cases. ECF 36 No. at 6. However, Defendants are currently opposed to this proposal. ECF No. 35 at 4. Without assurances from the parties, the Court will not rely on blanket speculation. *See Cortis*, 2012 WL 12885719, at *8. The parties should not *assume* that this trial will be conducted in the same manner and fashion as the bellwether trials in Arizona.

While *flights* from Amarillo to Dallas take less time than the average "rush hour" drivetime in the DFW Metroplex, there is no evidence that the physicians or other non-party witnesses will not incur substantial expenses. Plaintiff has failed to demonstrate that the Amarillo-based physicians would be compensated for their travel expenses, lost profits, and replacement costs to secure their attendance for trial in Dallas. The Court finds that Plaintiff has failed to meet his burden in demonstrating that the compulsory process to secure the attendance of non-party witnesses is available "without substantial expense." *See Volkswagen II*, 545 F.3d at 315–16. However, without a showing by Defendants that non-party witnesses are unwilling to testify, the

6

Court concludes this factor is deemed neutral. *See, e.g., McNew v. C.R. Bard, Inc.*, No. 1:19-CV-195-H, 2020 WL 759299, at *3 (N.D. Tex. Feb. 14, 2020) (Hendrix, J.) (citations omitted) (concluding "that this factor is neutral because Bard has not provided the Court with any reason to suspect that there may be unwilling witnesses in this case.").

### 3. *The Cost of Attendance for Willing Witnesses*

Plaintiff next argues that the cost of attendance factor is neutral. ECF No. 39 at 3. Plaintiff asserts that, if transferred, there will be no additional burden on witnesses because the physicians are "expected" to testify at trial by video depositions, and because all other trial witnesses will either be flown into Dallas or reside near Dallas. *Id.* As noted in the previous section, Plaintiff has not shown, other than by vague and non-specific claims, that the cost of attendance for willing witnesses will either be the same, or less, if transferred to the Dallas Division. On the contrary, cost of attendance in Dallas is likely *higher* for willing witnesses because food, lodging, local travel, and almost everything else is less expensive in Amarillo. Notably, 72-ounce steak dinners are *free*.[3]

While the witnesses who "likely" live near Dallas would be saved some expense, they all are or were employees of Defendants—not willing non-party witnesses. ECF No. 39 at 2. Naturally, if the cost of attendance for its witnesses was too onerous in Amarillo, Defendants would have requested a change in venue too. However, Defendants continue to assert that this is the most convenient venue and oppose transfer to Dallas. *See* ECF. No. 35. Plaintiff fails to demonstrate any articulable facts as to who these witnesses are, or any costs they would incur. ECF No. 39 at 3. Instead, Plaintiff only claims that this factor is neutral. ECF No. 39 at 3. The only witnesses even remotely identified are Plaintiff's treating physicians, who may have a higher

---

[3] If eaten in one hour. *See* The Big Texan, http://www.bigtexan.com/ (last visited April 8, 2020).

cost of attendance with trial in Dallas rather than in their home city of Amarillo. Accordingly, because the Court finds that venue in Dallas would likely impose *greater* costs on the witnesses, and because Plaintiff has not shown otherwise, the Court concludes that this factor weighs *against* transfer.

### 4. *All Other Practical Problems for an Easy, Expeditious, and Inexpensive Trial*

Plaintiff rests his entire argument on the final factor: efficiency. Plaintiff argues that "practical efficiencies weigh strongly in favor of transfer" because Judge Scholer has an "expedited 'rocket-docket' system she has set up to quickly and efficiently deal with" her seventeen cases. *Id.* Plaintiff further argues that because Dallas has an international airport, it would be "far more convenient for the parties and counsel." The Court disagrees.

First, the Court considers only the convenience of the parties and witnesses and affords no consideration to counsel's personal sentiments of convenience. *See Volkswagen I*, 371 F.3d at 206. While additional flights or driving distance do pose a slight inconvenience, traveling to Amarillo is not so inconvenient that venue must be transferred—and especially not because Dallas has "an international airport." ECF No. 39 at 3. In fact, Amarillo has its own international airport. The Rick Husband Amarillo International Airport serves the Amarillo metropolitan population (approximately 310,000), the Texas Panhandle, the Oklahoma Panhandle, and Eastern New Mexico with *dozens* of daily flights on major carriers: Southwest Airlines, American Airlines, and United Airlines. One-stop flights from San Francisco to Amarillo are occasionally *shorter* than they are to Dallas. Additionally, when it comes to airport security, the shorter and more efficient TSA checkpoints in Amarillo are more convenient than those at the crowded international airports in Dallas—particularly during a coronavirus pandemic.

8

Second, Plaintiff argues that having this case before one judge would avoid inconsistent decisions and allow the judge to organize proceedings to accommodate the parties and their witnesses. ECF No. 36 at 6. Currently, six cases transferred from the MDL court are pending before this Court. By Plaintiff's reasoning, if this case is transferred to the Dallas Division, then all cases pending anywhere in this district should also be transferred. The Court agrees that Judge Scholer is an exceptionally competent trial judge who has effectively and efficiently managed the Dallas Division's MDL cases to date—which weighs in favor of transfer. But this Court has the same constitutional requirements to read, analyze, and apply the law to the facts—like Judge Scholer.

Additionally, because this Court has five other cases pending before it, discovery and pre-trial matters will be streamlined. If this were the only case pending before the Court, or if all of the other MDL cases were pending before Judge Scholer, then the analysis might be different. However, this case is neither the lone case pending in West Texas, nor is it the only one pending before this Court. On the contrary, the majority of cases in this district have not been transferred, reassigned, or "consolidated" to the Dallas Division.

The Amarillo Division is not strained or backlogged with civil actions waiting to be set for trial. In fact, the Court's civil docket is open for an easy, expeditious, and inexpensive trial—one that the Court is pleased to schedule. The parties can be assured that the Court will implement procedures and protocols similar to Judge Scholer's and will move this case towards trial or resolution with speed and efficiency. Therefore, the Court concludes that some practicality factors weigh in favor of transfer, and some practicality factors weigh against transfer—thus netting a "neutral" score on said factor.

## B. Public Factors in the Interest of Justice

Plaintiff asserts that public factors also weigh in favor of transfer to the Dallas Division because it is (1) in the interest of judicial efficiency, and (2) has greater localized interests. ECF No. 37 at 6; ECF No. 39 at 4. In summary, Plaintiff argues that the first two factors weigh in his favor, while the third and fourth factors are neutral or inapplicable.

### 1. *Administrative Difficulties Flowing from Court Congestion*

Plaintiff asserts that the administrative duties flowing from court congestion of this case weigh in favor of transfer. ECF No. 39 at 4. Defendants argue the opposite. ECF No. 35 at 5. While Plaintiff argues that he desires the Dallas Division to avail himself of Judge Scholer's "rocket docket," Defendants assert that the earliest a trial setting could be set would be about a year from now.[4] *Id.* The probable trial date in Judge Scholer's courtroom is roughly identical to the probable trial date in this Court—at least under the standard scheduling orders in the Amarillo Division. However, with an *expedited* scheduling order, the parties should not be surprised if a trial date in this case is set *before* the cases pending in Dallas. Because it is confident that both venues are ready, willing, and able to manage the litigation, the Court concludes that this factor is neutral.

### 2. *Local Interest in Having Localized Interests Decided at Home*

Next, Plaintiff claims that venues in Arizona, New Jersey, California,[5] and "likely" the Dallas Division "have a far greater interest in this case than the Amarillo Division." ECF No. 39 at 4. However, Plaintiff does not seek transfer to venue in Arizona, New Jersey, or California. Plaintiff's argues that Dallas has a "far greater" localized interest than Amarillo because

---

[4] The Court notes that this order is entered during the COVID-19 pandemic. As such, these trial dates and deadlines will likely be further delayed.
[5] Arizona and New Jersey are the home venues of Defendant, while California is the home venue of Plaintiff.

10

Defendants' "sales reps [sic] involved in selling the filter to Plaintiff's treating physicians all likely live in the Dallas area." *Id.* The Court disagrees.

Plaintiff fails to state with any specificity what localized interests inhere in Dallas that do not inhere in Amarillo—other than a hazy claim that other witnesses or employees "likely" live in Dallas. *Id.* While Amarillo is the location of the alleged injury, the Court strains to find *any* localized interests that connects Plaintiff to the Dallas area. *See* ECF No. 1. Plaintiff's home venue at the time of the alleged injury was the Amarillo Division, and at the time of filing was apparently in Northern California. *See* ECF No 1. Therefore, because Amarillo has a local interest in this case—and Dallas has none—the Court concludes that this factor weighs *against* transfer.

### 3. *Familiarity of the Forum with the Law that will Govern the Case and Avoidance of Unnecessary Conflict of Laws Issues*

Lastly, both parties assert that the third and fourth factors regarding familiarity with forum law and potential conflicts of law are inapplicable as this case implicates "intra-district" transfer. ECF No. 39 at 4; ECF No. at 35 at 6. As such, the Court concludes that these factors are neutral.

### IV. CONCLUSION

Fairness and judicial efficiency are highly relevant in the Court's determination of whether transfer to the Dallas Division would be "clearly more convenient" and "in the interest of justice." 28 U.S.C. § 1404(a). Considering the arguments advanced by the parties and weighing all factors regarding Plaintiff's Amended Motion to Transfer (ECF No. 36), the Court determines that Plaintiff has not met his burden and DENIES the motion.

**SO ORDERED.**

April 9, 2020

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE